IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CERINA ARMIJO,

    Plaintiff,

v.                                                            1:16-cv-01001-LF

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Cerina Armijo's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 18), which was fully briefed on June 16, 2017. *See* Docs. 20, 21, 22. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to provide adequate narrative analysis to support the mental residual functional capacity ("RFC") he assessed. In particular, the ALJ failed to explain how he addressed the moderate to marked impairment in Ms. Armijo's relationships with coworkers and supervisors assessed by Dr. Robert Krueger. I therefore GRANT Ms. Armijo's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background and Procedural History

Ms. Armijo was born in 1966 and completed four years of college coursework, but did not earn a degree. AR 45, 196, 247.[4] She worked as a secretary for approximately 15 years, and for shorter periods as a cashier and a waitress. AR 47–48, 247. Ms. Armijo filed applications for disability insurance benefits and supplemental security income on December 19, 2011—alleging disability since February 16, 2011 due to fibromyalgia, a seizure disorder, post-traumatic stress disorder ("PTSD"), and bipolar disorder. AR 196–208, 246. The Social Security Administration ("SSA") denied her claims initially on August 2, 2012. AR 82–83, 138–41. The SSA denied her claims on reconsideration on July 10, 2013. AR 148–53. Ms. Armijo requested a hearing before an ALJ. AR 154–55. On December 8, 2014, ALJ John Rolph held a hearing. AR 39–81. ALJ Rolph issued his unfavorable decision on February 10, 2015. AR 17–38.

At step one, the ALJ found that Ms. Armijo had not engaged in substantial, gainful activity since February 16, 2011, her alleged onset date. AR 22. At step two, the ALJ found that Ms. Armijo suffered from the following severe impairments: "fibromyalgia (myalgia and myositis) with fatigue/malaise, history of seizure-like activity, headaches, depression/Bipolar NOS, anxiety and post-traumatic stress disorder (PTSD)." *Id.* At step three, the ALJ found that none of Ms. Armijo's impairments, alone or in combination, met or medically equaled a Listing. AR 23–25. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Armijo's RFC. AR 25–29. The ALJ found Ms. Armijo had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) including lifting and carrying twenty pounds occasionally and ten pounds frequently. She can stand and walk six hours each in an eight-hour day for forty-five to sixty minutes at a

---
[4] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

4

time. She can sit for six hours in an eight-hour day, for forty-five to sixty minutes at
a time. She may occasionally climb ramps and stairs, balance, stoop, kneel, crouch
and crawl. She may never climb ladders, ropes and scaffolds. She must avoid more
than occasional exposure to extreme cold and vibration. She must avoid all exposure
to hazards such as dangerous machinery, open flames, and unsecured heights. She is
fully capable of learning, remembering and performing simple, routine and repetitive
work tasks, involving simple work instructions, which are performed in a routine,
predictable, and low stress work environment, defined as one in which there is a
regular pace, few work place changes, and no "over the shoulder" supervision. She
can maintain concentration, persistence and pace for two hours at a time with normal
breaks. She may have occasional contact with supervisors and coworkers, but should
have minimal to no contact with the public.

AR 25.

At step four, the ALJ concluded that Ms. Armijo was unable to perform her past relevant work as a secretary or waitress. AR 30. The ALJ found Ms. Armijo not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as cleaner/housekeeper, electronics worker, "egg processor," and "cuff folder." AR 31. On April 13, 2015, Ms. Armijo requested review of the ALJ's unfavorable decision by the Appeals Council. AR 15–16. On July 11, 2016, the Appeals Council denied the request for review. AR 1–6. Ms. Armijo timely filed her appeal to this Court on September 7, 2016. Doc. 1.[5]

## IV. Ms. Armijo's Claims

Ms. Armijo raises two arguments for reversing and remanding this case: (1) the ALJ failed to address all of the moderate and marked limitations noted in the opinion of state agency medical consultant Dr. Robert Krueger; (2) the ALJ failed to address the limitations noted in the opinion of state agency medical consultant Dr. Michael Gzaskow. Because I remand based on the ALJ's failure to properly analyze the opinions of Dr. Krueger, I do not address the other alleged error, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2–3.

## V. Analysis

Ms. Armijo argues that the ALJ committed legal error by failing to provide an evidentiary basis for his mental RFC determination. Doc. 18 at 16. Specifically, she argues that the ALJ "failed to give the required narrative explanation for why he rejected Dr. Krueger's assessment for a marked to moderate impairment in relationships with coworkers and supervisors." *Id.* at 14. The Commissioner argues that it was sufficient for the ALJ to account for "most" of the moderate and marked limitations in Dr. Krueger's opinion, and that the RFC is adequate because it closely parallels the limitations in Dr. Krueger's opinion. Doc. 20 at 9–10. For the reasons outlined below, the Court finds that the ALJ failed to explain how the evidence supports the RFC with regard to Ms. Armijo's ability to interact with coworkers and supervisors. The Court remands so that the ALJ can provide the required narrative analysis.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect her physical abilities, mental abilities, and other abilities. 20 C.F.R. §§ 404.1545(b)–(d), 416.945(b)–(d). An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at*7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* If the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence, and "the record must demonstrate that the ALJ considered all of the

7

evidence." *Id.* at 1009–10. This does not mean that an ALJ must discuss every piece of evidence in the record. But it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

In this case, the ALJ failed to sufficiently tie the RFC findings to the evidence of record. The ALJ did not include an adequate narrative discussion citing medical and nonmedical evidence to support his mental RFC findings. Because the ALJ failed to draw these connections, the Court cannot meaningfully review the ALJ's decision, and remand is required.

State agency psychological consultant Dr. Robert Krueger assessed numerous moderate and marked impairments in Ms. Armijo's ability to do work-related activities:

- Moderate impairment with maintaining pace and persistence;
- Moderate "and at times marked" impairment in relationships with coworkers, supervisors, and the general public;
- Moderate "and at times marked" impairment with being aware of and reacting appropriately to dangers in work environments;
- Marked impairment with traveling to distant places alone;
- Possible marked impairment following some work instructions;
- Marked impairment in adjusting to changes in the work environment.

AR 588. The ALJ never mentioned the specific limitations in Dr. Krueger's opinion. The ALJ stated only that he gave Dr. Krueger's opinion "significant weight . . . even though [it does] not find the claimant as limited as the residual functional capacity statement above." AR 29.[6]

The ALJ failed to provide the narrative discussion required by SSR 96-8p. The ALJ summarized Ms. Armijo's mental health treatment records:

> Claimant has a history of Depression/Bipolar NOS (l2F/3; 12F/2). In the past, she reported that she was on a variety of medications, including Cymbalta and Lithium (12F/2). In August 2011, claimant indicated she had a history of depression, but did not have a history of taking antidepressant medications

---

[6] The ALJ also wrote a paragraph about the Global Assessment of Functioning ("GAF") score Dr. Krueger assessed. *See* AR 29. The GAF is not at issue in this appeal.

> (3F/l3). However, just a month later, claimant reported symptoms of depression (3F/8). In 2013, claimant was still struggling with depression (I3F/2). As recently as September 2014, claimant was participating in bi-monthly psychotherapy sessions (l7F/2).
>
> In 2011, claimant reported symptoms of anxiety, with attacks occurring daily (3F/8). She was taking Xanax (3F/13). By August 2012, claimant's anxiety was controlled (9F/3). However, in April 2014, claimant was being treated for anxiety symptoms (17F/2).
>
> Claimant has a history of post-traumatic stress disorder (I2F/3; 8F/4). She reported chronic sleep disturbance, some nightmares, disturbing memories about past abuse, tendencies for hyper vigilance, and tendencies for social avoidance (7F/5). She participated in psychotherapy sessions in 2014 to address these symptoms (17F/2).

AR 27. Then, with no narrative discussion, and no analytical link to these records or other evidence of record, the ALJ concluded that:

> Due to claimant's symptoms from depression/bipolar NOS, anxiety, and post-traumatic stress disorder, claimant is fully capable of learning, remembering and performing simple, routine and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular pace, few work place changes, and no "over the shoulder" supervision. She can maintain concentration, persistence and pace for two hours at a time with normal breaks. She may have occasional contact with supervisors and coworkers, but should have minimal to no contact with the public.

*Id*. The Court is left to guess at how the ALJ arrived at the mental limitations in Ms. Armijo's RFC. This is contrary to SSR 96-8p's requirement of a narrative analysis and *Clifton's* requirement that the ALJ identify evidence supporting and contradicting the decision. *See also Tomberlin v. Astrue*, No. 07-2592-KHV, 2009 WL 126158, at *14 (D. Kan. Jan. 16, 2009) (unpublished) (remanding where "ALJ summarized the evidence upon which he based his RFC assessment and stated his conclusion regarding mental RFC," but "failed to cite specific medical facts to describe how the evidence supports each mental RFC conclusion").

Ms. Armijo focuses her motion on the ALJ's failure to adequately explain why he "rejected" Dr. Krueger's assessment of a moderate to marked impairment in her relationships

9

with coworkers and supervisors. Doc. 18 at 11–16. She argues that the ALJ's RFC finding that she can have "**minimum to no** contact with the public" is consistent with Dr. Krueger's finding of a "moderate and at times marked impairment in relationships with coworkers, supervisors, and the general public." *Id*. at 13. However, she argues that the ALJ's RFC finding that she can have "**occasional** contact with supervisors and coworkers" is not consistent with Dr. Krueger's finding above. *Id.*[7] Ms. Armijo argues that the ALJ "never offered an adequate explanation for why he translated Dr. Krueger's marked to moderate limitation in interacting with coworkers, supervisors, and the general public into occasional contact with coworkers and supervisors and minimal to no contact with the public in his RFC." Doc. 21 at 4. I agree. Without a narrative explanation, the Court is unable to follow the ALJ's reasons for concluding that Ms. Armijo should have minimal to no contact with the public, but was still able to maintain occasional contact with coworkers and supervisors. *See Tomberlin*, 2009 WL 126158, at *14 (remanding where ALJ "did not explain how the evidence supports a finding that plaintiff is unable to perform work requiring contact with the public, but is able to perform work requiring minimal contact with co-workers, and yet is only able to work with occasional contact with supervisors").

Despite the ALJ's lack of a narrative discussion describing how the evidence supports each conclusion, the Commissioner urges the Court to find that the RFC "adequately accommodates Dr. Krueger's opined limitations." Doc. 20 at 10. The Commissioner's arguments, however, are not persuasive. The Commissioner's claim that the RFC accounts for "**most** of the moderate and marked limitations opined by Dr. Krueger" is an admission of error. *See* Doc. 20 at 9 (emphasis added). It is error for an ALJ to adopt some of a consultative

---

[7] Ms. Armijo argues that "there is no disease or injury that selectively impairs one's ability to interact with the general public but not coworkers or supervisors." Doc. 21 at 5 (quoting the Report of the Mental-Cognitive Subcommittee at C-12 (available at https://www.ssa.gov/oidap/Documents/AppendixC.pdf (last accessed March 5, 2018)).

10

examiner's restrictions while rejecting others without explanation. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others.") The court in *Haga* remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* The Commissioner neither points to evidence showing that the ALJ adopted all the moderate to marked limitations in Dr. Krueger's opinion, nor does she point to any explanation by the ALJ of his reasons for rejecting these limitations. An RFC accounting for "most" of the moderate to marked limitations is legally insufficient.

The Commissioner next argues that the ALJ, not the doctor, is charged with determining a claimant's RFC, and that because the ALJ gave Dr. Krueger's opinion "significant" rather than "controlling" weight, the ALJ was not "required to adopt all contours of the opinion." Doc. 20 at 10 (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). While it is true that the ALJ is charged with determining a claimant's RFC from the medical records, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (both effective Aug. 24, 2012 through March 26, 2017), *Haga* requires the ALJ to provide an adequate explanation for the moderate and marked limitations he did not include in Ms. Armijo's RFC.

The Commissioner suggests that this case is similar to *Oceguera*, in which the Tenth Circuit found that the RFC was adequately linked to evidence in the record when it "paralellel[ed] limitations" set forth by an examining psychologist. Doc. 20 at 10 (citing *Oceguera v. Colvin*, 658 F. App'x 370, 374 (10th Cir. 2016) (unpublished)). I disagree. In *Oceguera*, the court stated that it could "easily see the parallels between [the psychological consultant's] assessment and the RFC." *Oceguera*, 658 F. App'x at 374. In addition, the

claimant in *Oceguera* "did not point [the Court] to any other way in which her impairments were not reflected in the RFC finding." *Id.* In Ms. Armijo's case, however, the Court does not "easily see the parallels" between the moderate to marked impairment in Ms. Armijo's relationships with coworkers and supervisors, and the ALJ's RFC finding that she could have occasional contact with coworkers and supervisors, particularly when the moderate to marked impairment in Ms. Armijo's relationship with the general public resulted in an RFC finding that she have no to minimal contact with the public.

Ms. Armijo also points to additional record evidence documenting her difficulties with relationships with coworkers and supervisors: (1) She testified that she was fired for becoming "agitated at work with other employees" (AR 47); (2) the ALJ noted that Ms. Armjio's records documented "mood swings, severe anger problems, explosive anger outbursts, [and being] violent prone at times" (AR 54); (3) Ms. Armijo testified that she had "problems with management and . . . supervisors" in her past jobs (AR 55); (4) Ms. Armijo testified that she gets "angry at the snap of a finger" (AR 57); (5) state agency examining consultant Dr. Michael Gzaskow found that she has "a difficult time relating to others based on her PTSD issues with agoraphobia and hypervigilance" (AR 625). Doc. 18 at 6, 15.[8] The ALJ never explicitly discussed Dr. Krueger's finding that Ms. Armijo had a moderate to marked impairment in relationships with coworkers and supervisors. Furthermore, the ALJ never discussed any of the record evidence cited by Ms. Armijo which documents her impairment with these relationships. Because there is no discussion of the salient evidence, unlike *Oceguera*, the Court is unable to see the parallels between Dr. Krueger's findings and the RFC. On remand, the ALJ must link the RFC to the record evidence. *See*

---

[8] Ms. Armijo testified that she "cornered a manager." AR 55. Ms. Armijo also reported that the owner of the restaurant where she worked transferred her to another location "due to a personal confrontation." AR 234.

*Clifton*, 79 F.3d at 1009 (if the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct).

The Commissioner suggests that the fact that the ALJ limited Ms. Armijo to simple or unskilled work adequately accounts for the limitations in Dr. Krueger's opinion. Doc. 20 at 9. The Commissioner claims that the ALJ's RFC closely parallels the limitations in Dr. Krueger's opinion, but like the ALJ, provides no narrative explanation about how the RFC addresses each of the noted mental limitations. *See id.* at 9–10. The Commissioner does not point to any case law indicating that a moderate to marked limitation in relationships with coworkers and supervisors can be addressed by a limitation to "unskilled work." "A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations)). "[A] moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. Thus, "moderate limitations must be accounted for in the RFC finding." *Jaramillo*, 576 F. App'x at 876.

## VI. Conclusion

The ALJ erred by failing to support his RFC assessment with sufficient narrative analysis. The Court remands so that the ALJ can provide this analysis. The Court does not reach Ms. Armijo's other claimed error, as this "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 18) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent